UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81228-Cv-COHN
        (04-80071-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

JUAN BANNISTER,                    :

        Movant,                    :

v.                                 :          REPORT OF
                                          MAGISTRATE JUDGE
UNITED STATES OF AMERICA,          :

        Respondent.                :
_____

Introduction

        This matter is before this Court on the movant's motion to
vacate pursuant to 28 U.S.C. §2255, attacking his conviction and
sentence for conspiracy to commit armed bank robbery, armed bank
robbery, interference with commerce by threats or violence and
using and carrying a firearm during and in relation to a crime of
violence, entered following a jury verdict in case no. 04-Cr-80071-
Cohn.

        The Court has reviewed the motion (Cv-DE#1), the government's
response with multiple exhibits (Cv-DE#11), the Pre-sentence
Investigation Report (PSI), and all pertinent portions of the
underlying criminal file.

Claims

        Construing the movant's arguments liberally as afforded pro se
litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the
movant appears to raise the following claims in his §2255 motion:

        1.   The movant was denied effective assistance of

counsel when his attorney failed to object to the district court's lack of jurisdiction over the crimes charged in the indictment. (Cv-DE#1:4).

2.   The movant was denied effective assistance of counsel when his attorney failed to argue that the prosecutor failed to obtain a transfer order or non-prosecution order from the State of Florida, thus violating his due process rights. (Cv-DE#1:4).

3.   The movant was denied effective assistance of counsel when his attorney failed to move for a severance based on "prejudicial spillover" which violated his right to a fair trial. (Cv-DE#1:4).

4.   The movant was denied effective assistance of counsel when his attorney failed to argue that the district court erroneously instructed the jury on co-conspirator liability pursuant to <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946). (Cv-DE#1:5).

5.   The movant was denied effective assistance of counsel when his attorney failed to argue that the district court had no jurisdiction to impose two consecutive 25 year mandatory minimum sentences for his second and third convictions of a firearm offense, in violation of 18 U.S.C. §924(c)(1)(A). (Cv-DE#1:6a).

6.   The movant was denied effective assistance of counsel when his attorney failed to argue that the movant is actually innocent of the charges, which convictions were based on false and unreliable testimony of government witnesses. (Cv-DE#1:6a).

2

7.   The movant was denied effective assistance of counsel when his attorney failed to argue that the prosecution knowingly and intentionally presented false and unreliable testimony in order to convict the movant. (Cv-DE#1:6a).

8.   The movant was denied effective assistance of counsel when his attorney failed to argue that the indictment's failure to provide him with notice of co-conspirators for conspiracy charges involving the robberies resulted in a violation of his due process right to notice and his right against double jeopardy. (Cv-DE#1:6a).

9.   The movant was denied effective assistance of counsel when his attorney failed to object based on multiplicity to the government's charging two separate conspiracies for the robberies. (Cv-DE#1:6b).

10.   The movant was denied sufficient assistance of counsel at trial and on appeal. (Cv-DE#1:6b).

11.   The movant was denied effective assistance of counsel when his attorney failed to object to the sentencing enhancements causing him to be sentenced "outside of his initial offense guideline level, initial offense guideline and maximum guideline sentence" imposed in violation of Booker. (Cv-DE#1:6b).

12.   The movant was denied effective assistance of counsel when his attorney failed to challenge the "admission of inaccurate and contaminated DNA evidence and graphs. (Cv-DE#1:6c).

13.  The movant was denied effective assistance of counsel when his attorney failed to object to a biased juror. (Cv-DE#1:6c).

<u>Procedural History</u>

The procedural history of the underlying criminal case reveals that the movant was charged by way of a Fifth Superseding Indictment, with a series of offenses arising out of his participation, along with others, of three armed bank robberies. (Cr-DE#115). The movant was charged with conspiracy to and in fact perpetrating an armed bank robbery of three banks, with conspiracy to commit the robbery by obstructing interstate commerce and with brandishing a firearm in relation to those crimes, in violation of 18 U.S.C. §§371, 2113(a) and (d), 1651(a) and 924(c)(1)(A), respectively. (<u>Id.</u>).

Specifically, the movant was charged in Counts One through Four, for the offenses that occurred on November 10, 2003 at a Bank of America branch in West Palm Beach, Florida. (Cr-DE#115). Moreover, in connection with the armed robbery of a First National Bank in Tequesta, Florida, on April 14, 2004, the movant was charged in Counts Five through Eight. (<u>Id.</u>). Likewise, in regards to the SunTrust Bank branch in Port Saint Lucie, Florida, also on April 14, 2004, the movant was charged in Count Nine. (<u>Id.</u>). Additionally, the movant was charged in Count Ten with the substantive violations. (<u>Id.</u>). Also, in Counts Twelve and Thirteen, the movant was charged with conspiring to obstruct interstate commerce and with having brandished a firearm during and in relation to the underlying bank robbery. (<u>Id.</u>). Finally, the indictment included a criminal forfeiture of the uncovered proceeds of all three robberies. (<u>Id.</u>).

4

On February 10, 2005, during calendar call, the parties addressed a severance issue with the court. Co-defendant Rashard Reddick provided a post-Miranda statement in which the movant was inculpated as the getaway driver in the SunTrust bank robbery on April 14, 2004. As a result, the court found that a severance of the defendants was in order pursuant to Bruton because Reddick's statement could not be redacted without causing prejudice to the movant. However, instead of having two separate trials, with the same evidence and witnesses, the court determined that a joint jury trial with two separate juries was most prudent. The movant filed a subsequent objection (Cr-DE#154) thereto, but was overruled by the court. (Cv-DE#11,Ex.G:11).

Thereafter, on February 14, 2005, trial commenced (Cr-DE#161) and concluded on March 7, 2005, when verdicts were returned finding the movant guilty as charged. (Cr-DE#187).

A PSI was prepared in anticipation of sentencing, wherein the probation officer determined that Counts One, Two and Three were grouped together pursuant to U.S.S.G. §3D1.2(b), as one count charges a conspiracy and the other counts are the substantive offense that is the sole object of the conspiracy and the counts involved the same victim and two or more acts connected by a common criminal objective. (PSI¶38). Counts Five, Six and Seven were grouped together, also pursuant to U.S.S.G. §3D1.2(b), for the same reasons stated in relation to the foregoing counts. (Id.). Moreover, Counts Nine, Eleven and Twelve were grouped together as well, pursuant to U.S.S.G. §3D1.2(b). (Id.).

Likewise, pursuant to U.S.S.G. §2X1.1, the guideline section for the substantive offenses will be utilized in U.S.S.G. §2B3.1. (PSI¶38). It was further determined that Groups One, Two and Three were subject to the multiple counting rules pursuant to U.S.S.G.

§3D1.4. (Id.). Moreover, Counts Four, Eight and Thirteen were found in U.S.S.G. §2K2.4, which provided that an offense involving the brandishing of a firearm during a crime a violence is punishable by the term of imprisonment that is required by statute. (Id.). As such, the movant was subjected to a 57 year consecutive term of imprisonment. (Id.).

Bank of America Robbery:

The guideline for an 18 U.S.C. §2113(d) offense was found in U.S.S.G. §2B3.1(a) of the guidelines, which provided that an offense involving robbery had a base offense level of 20. (PSI¶39). Moreover, the base offense level was increased by two levels, because the property of a financial institution was taken. (PSI¶40). Likewise, because the movant was an organizer, leader, manager or supervisor of the criminal activity, his offense level was increased by two levels. (PSI¶42). Two additional points were added because the movant used or attempted to use a person less than 18 years old to commit the offense or assist in avoiding detecting of, or apprehension for, the offense. (PSI¶43). Accordingly, his adjusted offense level was set at 26. (PSI¶45).

First National Bank & Trust Robbery:

The guideline for an 18 U.S.C. §2113(d) offense was found in U.S.S.G. §2B3.1(a) of the guidelines, which provided that an offense involving robbery had a base offense level of 20. (PSI¶46). However, because the property of a financial institution was taken, two levels were added to his base offense level. (PSI¶47). Moreover, because the loss was more than $50,000 but not more than $250,000, his base offense level was increased by two levels. (PSI¶48). Specifically, the movant was held accountable for $94,100. (Id.). Likewise, four levels were added to the base

6

offense, because the movant was an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive. (PSI¶50). Finally, because the movant used or attempted to use a person less than 18 years old to commit the offense or assist in avoiding detecting of, or apprehension for, the offense, two levels were added. (PSI¶51). Accordingly, his adjusted base offense level was 30. (PSI¶53).

<u>Sun Trust Bank Robbery:</u>

The guideline for an 18 U.S.C. §2113(d) offense was found in U.S.S.G. §2B3.1(a) of the guidelines, which provided that an offense involving robbery had a base offense level of 20. (PSI¶54). However, because the property of a financial institution was taken, two levels were added to his base offense level. (PSI¶55). Moreover, because the loss was more than $50,000 but not more than $250,000, his base offense level was increased by two levels. (PSI¶56). Finally, four levels were added to the base offense, because the movant was an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive. (PSI¶58). Accordingly, the movant's adjusted base offense level was set at 26. (PSI¶60).

Notwithstanding the foregoing determinations by the probation officer, the movant, pursuant to U.S.S.G. §4B1.1(a), was classified a criminal career offender and therefore, his base offense level was set at 34. (PSI¶68).

The probation officer further determined the movant had a subtotal of eight criminal history points. (PSI¶91). However, because the movant committed the offense while serving a term of probation, two points were added. (PSI¶92). Thus, the movant had a

total of ten criminal history points and a criminal history category of V. (PSI¶93). Notwithstanding his criminal history category, due to his classification as a career offender, his category in every case shall be VI. (Id.). Based on a total offense level of 34 and a criminal history category of VI, the guideline imprisonment range was 262 to 327 months. (PSI¶116). However, pursuant to U.S.S.G. §4B1.1(c)(2)(A), the guideline range was 946 to 1011 months. (Id.). As to Counts One, Five and Nine, the guideline range was 60 months. (Id.). Moreover, as to Counts Four, Eight and Thirteen, a term of imprisonment of 57 years shall run consecutive to any other term of imprisonment. (Id.).

On May 27, 2005, the movant appeared for sentencing, wherein he was sentenced to 60 months imprisonment as to Counts One, Five and Nine, 240 months imprisonment as to Counts Three, Seven and Twelve, and 296 months as to Counts Two, Six, Ten, all to run concurrent with each other; 84, 300 and 300 months which, by statutory command, were to run consecutive with each other and with the underlying offenses, a total of 5 years of supervised release; a special assessment of $1,200; and restitution in the amount of $177,275.62. (Cr-DEs#222,224). The movant's imprisonment totaled 984 months.

The judgment was entered by the Clerk on May 31, 2005. (Cr-DE#224). The movant filed a timely notice of appeal on June 6, 2005, raising the following claims:

    1.    Whether Mr. Bannister's conviction for bank robbery and Hobbs Act violation for the same conduct violate the Double Jeopardy Clause of the Fifth Amendment?

    2.    Whether the Sentence imposed by the District Court violated Mr. Bannister's Double Jeopardy rights where the court imposed multiple punishments for the same conduct?

8

3.    Whether the District Court erred when it admitted statements made by Mr. Bannister during custodial interrogation where the statements themselves were merely an invocation of his right to remain silent and a refusal to answer any further questions?

4.    Whether the government failed to prove Mr. Bannister's guilt beyond a reasonable doubt on the four counts relating to the robbery of the First National Bank in Tequesta, Florida?

5.    Whether the district court committed reversible error when it admitted evidence of uncharged criminal conduct against Mr. Bannister?

6.    Whether the district court erred when it admitted the testimony of cooperating co-defendants where the government had 'paid' for that testimony by promising those witnesses immunity from prosecution, leniency and a lower sentence in return for their favorable testimony?

7.    Whether absent the government's 'bought' testimony, the government failed to prove beyond a reasonable doubt Mr. Bannister's guilt on the eight charges relating to the robberies of the Bank of America in West Palm Beach and the SunTrust Bank in Port St. Lucie and whether this court should apply its inherent supervisory powers to invalidate those convictions?

8.    Whether the district court lacked the authority to sentence Mr. Bannister to consecutive 300-month sentences on Counts Eight and Thirteen where the indictment failed to charge that the convictions were either a 'second or subsequent' conviction as required by federal statute in order to increase the punishment from seven years to twenty-five years?

(Cv-DE#11,Ex.D). On May 29, 2007, the Eleventh Circuit, per curiam, affirmed the movant's sentence and conviction in a written, but unpublished opinion. United States v. Reddick, 231 Fed. Appx. 903 (11th Cir.), cert. denied, 128 S.Ct. 3162 (2007).  Thereafter, the movant petitioned for writ of certiorari, which was subsequently denied on October 1, 2007. Id. Thus, the judgment of conviction in the underlying criminal case became final at the latest on October

1, 2007, when certiorari review was denied by the Supreme Court.[1]
See <u>United States v. King, et al.</u>, 66 Fed. Appx. 844 (11th Cir.
2003)(table), <u>cert. den'd</u>, 540 U.S. 902 (2003). The motion to
vacate was untimely filed on October 19, 2008 (Cv-DE#1), outside
the one year limitations period of §2255.

<u>Timeliness</u>

       Prior to the one year statute of limitations, on September 5,
2008, the movant filed with the district court a motion for
extension of time to file his 2255 motion because the prison
wherein he was incarcerated had been on lock down. (Cr-DE#287). The
government responded thereto. (Cr-DE#289). In granting the movant's
motion, the District Court stated "although the Court agrees with
the position taken by the Government in its response, the Court in
an abundance of caution," granted the movant's request and ordered
him to file his motion to vacate no later than November 1, 2008.
(Cr-DE#290). The motion to vacate was signed on October 19, 2008
and it was docketed on October 23, 2008. (Cv-DE#1).

       In this matter, upon close scrutiny, the statute does not
permit out of court filings.  The deadline to file a §2255 motion
established by the AEDPA may not be subject to judicial expansion.
<u>United States v. Polanco</u>, 1999 WL 328352 (S.D.N.Y. May 21, 1999);
<u>see</u>, <u>e.g.</u>, <u>United States, v. Eubanks</u>, No. 7S 92-Cr.392, 1997 WL
115647 (S.D.N.Y. Mar. 14, 1997) ("The AEDPA provision appears to

---

       [1]The Supreme Court has stated that a conviction is final when a judgment
of conviction has been rendered, the availability of appeal exhausted, and the
time for a petition for certiorari elapsed or a petition for certiorari finally
denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United
States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered
by a United States court of appeals, a petition for writ of certiorari must be
filed within 90 days of the date of entry. The 90 day time period runs from the
date of entry of the judgment rather than the issuance of a mandate.  <u>Sup.Ct.R</u>.
13; <u>see</u> <u>also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

state a statute of limitations which cannot be waived or modified by the Court."); see also Butler v. United States, No. 98 Civ. 7020, 1998 WL 788794 (S.D.N.Y. Nov. 10, 1998)(citing cases recognizing the issue without deciding it).

Moreover, the judicial decision concerning the timeliness of a §2255 motion may not be made before the motion is actually filed. Polanco, 1999 WL 328352 (S.D.N.Y. May 21, 1999).

Additionally, other courts have also applied the reasoning in denying pre-filing applications for extensions of time of the §2255 deadline.  Id.  See also United States v. Chambliss, No. 97-1655, 1998 WL 246408 (6th Cir. May 4, 1998)(unpublished opinion)("court dismissed appeal of denial of motion for an extension, holding that '[t]he timeliness of a §2255 can be addressed by the district court if and when a motion is filed. There is currently no case or controversy and this court does not render advisory opinions.'); Eubanks, 1997 WL 11567 ("denying as premature an application for extension . . . ."); United States v. Clarke, No. 96 Cr. 125, 1998 WL 91069 (D. Conn. Feb. 24, 1998)("denying request for extension of time to file §2255 motion as premature"); United States v. Agnes, No. Crim. 93-314-01, Civ. A. 97-2892, 1997 WL 763025 (E.D. Pa. Dec. 9, 1997)("denying request for extension because the movant 'has not presented the Court with either a section 2255 motion or a justiciable controversy').

In this case, the judgment was entered against the movant on May 31, 2005.(Cr-DE#224). On October 1, 2007, when certiorari review was denied, the movant's judgment became final and at this point, the movant's criminal case ended. On September 5, 2008, the movant filed a motion for enlargement of time to file a §2255 motion, without attaching a proposed §2255 petition. (Cr-DE#287).

11

At that juncture, there was no civil action and thus there was no case or controversy at issue. In the absence of a case or controversy, a court does not have jurisdiction and a decision on such a matter is an improper advisory opinion.

Nevertheless, although the movant's motion to vacate is time-barred, his claims will be addressed on the merits <u>infra</u>.

Discussion of Claims

First, it should be noted that the foregoing claims, could have been, but were not raised on direct appeal. Notwithstanding, construing the arguments made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claims. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Thus, each claim will be identified and treated in turn in this Report, <u>infra</u>.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id.</u> at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995).

12

Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001).

Moreover, review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994).

In **claim one**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to the district court's lack of jurisdiction over the crimes charged in the indictment. (Cv-DE#1:4). Although the movant fails to specify whether the court lacked personal jurisdiction or subject matter jurisdiction, both will be addressed, as each claim lacks merit.

The court did not lack personal jurisdiction over the movant. Under federal criminal law, "personal jurisdiction exists in all criminal cases where the defendant is lawfully before the court." <u>United States v. Bodmer</u>, 342 F. Supp. 2d 176, 187-188 (S.D.N.Y. 2004); <u>citing</u> <u>Kerr v. Illinois</u>, 119 U.S. 436, 440-43 (1886); <u>United States v. Rosenberg</u>, 195 F.2d 583, 602 (2d Cir. 1952). Pursuant to the United States Constitution, "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ." U.S. Const. art. III, §2, cl.3. Accordingly, if

"venue is proper, the court does not inquire into whether it has jurisdiction over the defendant or the extent of the defendant's contacts within the forum state." <u>Bodmer</u>, 342 F. Supp. 2d 188. As such, "jurisdiction is presumed by virtue of the defendant's presence." <u>Id.</u> Venue was proper in the underlying criminal proceeding, since the movant resided, committed the offense and was arrested in Palm Beach County and St. Lucie County in the Southern District of Florida.

Moreover, the court did not lack subject matter jurisdiction over the offense. A court's power to adjudicate a federal criminal prosecution comes from 18 U.S.C. §3231, which gives federal courts original jurisdiction over "all offenses against the laws of the United States." <u>See</u> 18 U.S.C. §3231. Review of the Fifth Superseding Indictment reveals that the movant violated one or more federal criminal statutes, an "offense against the laws of the United States," tracking the language of the statute and setting forth the essential elements of the crime. No showing has been made in this collateral proceeding that the court lacked subject matter jurisdiction. Counsel was not ineffective for failing to pursue this claim. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. <u>See</u> <u>Matire v. Wainwright</u>, 811 F2d 1430 (11th Cir. 1987).

In **claim two**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that the prosecutor failed to obtain a transfer order or non-prosecution order from the State of Florida, thus violating his due process rights. (Cv-DE#1:4).

It appears the movant argues that the United States Government had no authority or jurisdiction to indict him for committing armed

14

bank robbery because the State of Florida never issued a "transfer order or non-prosecution" order for his crimes. (Cv-DE#1:4). Notwithstanding the movant's arguments, there is no requirement that the State of Florida issue either a "transfer" or "non-prosecution" order before the federal government can indict a defendant as the federal government has concurrent jurisdiction over the movant's offenses. United States v. Nathan, 202 F. 3d 230 (4th Cir. 2000), cert. denied, 120 S.Ct. 1994 (2000)("when defendant violates both state and federal laws, either the state or the United States or both may prosecute him."). Moreover, under the dual sovereignty rule, the movant could have been prosecuted in federal court despite an acquittal from state court on the same charges. United States v. Sewell, 252 F.3d 647 (2d Cir. 2001), cert. denied, 122 S.Ct. 382 (2001). Likewise, the movant fails to assert any constitutional right to a trial only in state court and only on state law. As such, under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. See Matire v. Wainwright, supra.

In **claim three**, the movant asserts he was denied effective assistance of counsel when his attorney failed to move for a severance based on "prejudicial spillover" which violated his right to a fair trial. (Cv-DE#1:4).

First, the movant fails to provide any facts from either evidence or testimony proffered during trial that prejudiced him. Likewise, the movant fails to provide any law in support thereof. As such, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported

by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8th Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11th Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5th Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5th Cir. 1979). There is nothing of record in this proceeding or the underlying criminal case to support the movant's vague assertions. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. See Matire v. Wainwright, supra.

Although the movant fails to explain how he was prejudiced, he appears to argue that as a result of evidence presented in light of his co-defendant, Reddick, he suffered from "prejudicial spillover." This claim is without merit. First, the movant's counts were properly joined. Second, his case was properly severed from Reddick's pursuant to a Bruton issue. Moreover, the district court properly impaneled two juries, one for the movant and one for Reddick. Finally, the movant was charged in all three related armed bank robberies and Reddick, along with the movant, was charged in the SunTrust Bank robbery.

The general rule is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases. United States v. Brown, 505 F.3d 1229, 1268, (11th Cir. 2007), citing, Zafiro v. United States, 506 U.S. 534, 537-38 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."); United States v. Magdaniel-Mora, 746 F.2d

715, 718 (11th Cir. 1984)("To repeat the familiar, persons indicted
together ordinarily should be tried together."); <u>United States v.
Baker</u>, 432 F.3d 1189, 1236 (11th Cir. 2005); <u>see also</u> <u>United States
v. Beale</u>, 921 F.2d 1412, 1428 (11th Cir. 1991)("The general rule is
that defendants charged with a common conspiracy should be tried
together.").

When defendants have been properly joined for trial, severance
should be granted only if there is a serious risk that a joint
trial would compromise a specific trial right of one of the
defendants or prevent the jury from making a reliable judgment
about guilt or innocence.  <u>Zafiro v. United States</u>, 506 U.S. 534,
539 (1993); <u>United States v. Blankenship</u>, 382 F.3d 1110, 1122 (11th
Cir. 2004). The Court recognizes that serious risk to the integrity
of a joint trial can occur when evidence that the jury should not
consider against a defendant and that would not be admissible if a
defendant were tried alone is admitted against a co-defendant.
<u>Zafiro</u>, <u>supra</u>. Although severance may be warranted in some cases,
courts have held that less drastic measures, such as limiting
instructions, often will suffice to cure any risk of prejudice.
<u>Id.</u>, <u>citing</u> <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987).

The Eleventh Circuit's framework for analyzing a motion to
sever based on the desire to offer the exculpatory testimony of a
co-defendant is well established. The defendant must first
demonstrate: "(1) a bona fide need for the testimony; (2) the
substance of the desired testimony; (3) the exculpatory nature and
effect of the desired testimony; and (4) that the co-defendant
would indeed have testified at a separate trial." <u>United States v.
Cobb</u>, 185 F.3d 1193, 1197 (11th Cir. 1999). Once the defendant
makes that threshold showing, the court must then: "(1) examine the
significance of the testimony in relation to the defendant's theory

17

of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." United States Baker, 432 F.3d 1189, 1239 (11th Cir. 2005).

The movant has failed to identify a specific trial right that was compromised by the joint trial nor has he shown that the jury was unable to make an individualized determination about his guilt or innocence. Thus, no showing has been made that even had counsel argued as a basis for severance the reasons set forth herein, that the court would have granted a hearing which would have resulted in severance.

Moreover, in this case, during calendar call, the parties addressed the Bruton issue because Reddick had provided a post-Miranda statement which inculpated the movant as the getaway driver in the SunTrust Bank robbery. Accordingly, the court found that a severance of the defendants was necessary under Bruton. However, the court decided that instead of presiding over two, three week trials with the same evidence and witness, it would proceed with a joint trial, however, with two separate juries. (Cr-DE#152). Thereafter, the movant objected to the court's decision of impaneling two juries (Cr-DE#154), however, said motion was subsequently overruled on the day trial commenced. (Cv-DE#11,Ex.G:11).

Accordingly, during trial, prior to Detective Jason Houston's testimony about Reddick's post-Miranda statement, the government rested its case as to the movant and the jury, pertaining to the movant, was excused from the courtroom. (Cr-DE#201:73-74). Moreover, the government provided separate summations to Reddick's and the movant's juries, so that no reference of Reddick's

18

statement was made in the movant's case. (Cr-DE#200:214). For the foregoing reasons, no deficient performance or prejudice has been established in this collateral proceeding and the movant is therefore entitled to no relief on this claim.

In **claim four**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that the district court erroneously instructed the jury on co-conspirator liability pursuant to Pinkerton v. United States, 328 U.S. 640 (1946). (Cv-DE#1:5). Specifically, the movant contends that his due process right "to have the jury determine guilt on the required elements of the substantive offenses, where the petitioner is actually innocent of several of the substantive offenses and the crimes did not fall within the scop [sic] of the unlawful project and was merely a part of the ramifications of a plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." (Id.:5-6).

During trial, the government conceded that the movant never entered any of the three banks or brandished a firearm. Notwithstanding, the movant is responsible for the actions therein pursuant to Pinkerton, supra, which determined, that "a co-conspirator can be punished for a substantive offense committed by one of his co-conspirators so long as the offense is reasonably foreseeable and is committed in furtherance of the conspiracy." United States v. Caporale, 806 F.2d 1487, 1508 (11th Cir. 1986).

Pursuant to 18 U.S.C. §924(c), it is unlawful to use or possess a firearm during and in relation to a crime of violence. Section 924(c) requires the court to impose an additional penalty of between five and thirty years for possession or use of a firearm, depending on its type and use. See 18 U.S.C.

19

§924(c)(1)(A)-(B). This section imposes a sentence of "not less than 30 years" if the firearm in question is "a machinegun." 18 U.S.C. §924(c)(1)(B)(ii).

Criminal defendants may be held liable under §924(c) for the actions of their coconspirators on one of two theories: aiding and abetting or reasonable foreseeability. See United States v. Williams, 334 F.3d 1228, 1232-33 (11th Cir. 2003)(explaining criminal liability under §924(c) on aiding and abetting theory); United States v. Diaz, 248 F.3d 1065, 1100 (11th Cir. 2001) (explaining criminal liability under §924(c) under Pinkerton's reasonable foreseeability standard). Under 18 U.S.C. §2, one who "aids, abets, counsels, commands, induces or procures [the] commission [of a federal crime] is punishable as a principal." To prove aiding and abetting a §924(c) offense, the government must show that the substantive offense of carrying or using a firearm in relation to a crime of violence or drug trafficking crime was committed, that the defendant associated himself with the criminal venture, and that he committed some act that furthered the crime. Williams, 334 F.3d at 1232.

Alternatively, under Pinkerton liability, criminal defendants may be held vicariously liable under §924(c) for the reasonably foreseeable actions of their coconspirators. See United States v. Diaz, 248 F.3d at 1099, citing, United States v. Bell, 137 F.3d 1274, 1275 (11th Cir. 1998). In Pinkerton, the Supreme Court held that where there was evidence that substantive offenses were committed by one co-conspirator in furtherance of a conspiracy, the evidence was sufficient to sustain another co-conspirator's convictions for the substantive offenses, even though there was no evidence of his direct participation therein. Pinkerton, supra. Thus, a co-conspirator may be convicted of aiding and abetting the

commission of a crime if he has some knowledge of the proposed crime. <u>See</u> <u>United States v. Giraldo</u>, 80 F.3d 667, 676 (2d Cir. 1996).

Review of the record in this case reveals that counsel, after the government rested, moved for a judgment of acquittal as to each of the brandishing of a firearm counts as the testimony was clear that during the course of the crimes, the movant never at any time brandished a firearm. (Cv-DE#11,Ex.R:117). However, in response thereto, the government argued that pursuant to the <u>Pinkerton</u> instruction, if the movant knowingly and willfully joined a conspiracy, which is their argument on the guns, he is liable "as if he stood in the bank and held the pistol at the lady's head himself. And, so I believe that he is legally responsible for that." (<u>Id.</u>:121). Subsequent to the arguments, the court denied defense counsel's motion for a judgment of acquittal. (<u>Id.</u>:122). Specifically, the court stated "[i]nsofar as the brandishing is concerned, I agree that under the <u>Pinkerton</u> instruction, and also as an aider and abetter, that Mr. Bannister would be criminally liable. So Bannister's motion for judgment of acquittal under rule 29 will be respectively denied." (<u>Id.</u>).

In this case, the movant cannot satisfy the prejudice prong of <u>Strickland</u>, <u>supra</u> because he has not demonstrated a reasonable probability that the <u>Pinkerton</u> instruction adversely affected his trial rights and would have resulted in an acquittal as to his offenses. The court properly instructed the jury regarding the <u>Pinkerton</u> instruction. Thus, the movant fails to establish what more counsel could have done on his behalf, and therefore, has failed to establish either deficient performance or prejudice pursuant to <u>Strickland</u>, <u>supra</u>. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on

appeal. <u>See</u> <u>Matire v. Wainwright</u>, <u>supra</u>.

In **claim five**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that the district court had no jurisdiction to impose two consecutive 25 year mandatory minimum sentences for his second and third convictions of a firearm offense, in violation of 18 U.S.C. §924(c)(1)(A). (Cv-DE#1:6a).

First, the movant fails to provide any law or facts, other than self-serving allegations in support of his claim. As such, bare and conclusory allegations of ineffective assistance are insufficient.

Moreover, an issue resolved against a movant on direct appeal cannot be relitigated in a §2255 motion. <u>United States v. Frady</u>, 456 U.S. 152, 166-168 (1982); <u>Dermota v. United States</u>, 895 F.2d 1324 (11th Cir. 1990), <u>cert. denied</u>, 498 U.S. 837 (1990); <u>United States v. Johnson</u>, 615 F.2d 1125, 1128 (5th Cir. 1980); <u>United States v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986). Only if there has been an intervening change in the law can an issue decided on direct appeal be relitigated in a motion to vacate. <u>See generally</u>: <u>Davis v. United States</u>, 417 U.S. 333 (1974). The movant has shown no change of circumstances.

The substantive issue underlying this ineffective assistance of counsel claim was raised and rejected on direct appeal. In the movant's appellate brief, the following issue was raised:

> The district court lacked authority to sentence Mr.
> Bannister to consecutive 300-month (25 years) sentences
> on Counts Eight and Thirteen where the indictment failed
> to charge that the convictions were either a 'second or

subsequent' conviction as required by federal statute in order to increase the punishment from seven to twenty-five years.

(Cv-DE#11,Ex.D).

In rejecting the aforementioned claim, the Court of Appeals found as follows:

> Bannister argues that the district court improperly sentenced him to two consecutive 25-year jail terms for using a firearm during the First National and SunTrust bank robberies since the indictment did not charge that either of the convictions was 'second or subsequent' to his Bank of America firearm conviction. Bannister acknowledges that Eleventh Circuit precedent holds than an indictment need not charge that additional convictions under 18 U.S.C. §924(c)(1)(C) were 'second or subsequent.' See United States v. Woodruff, 296 F.3d 1041, 1050 (11th Cir. 2002). Bannister did not raise this issue below, so we review the alleged sentencing error under a plain error standard. See Aquillard, 217 F.3d at 1320.
>
> Applying that standard, we find that the district court did not commit plain error when it sentenced Bannister in keeping with our precedent in Woodruff. And, nothing in subsequent sentencing case law disturbs that holding. See Blakely v. Washington, 542 U.S. 296 (2004). Thus, for example, in the 2004 Blakely v. Washington decision, the Supreme Court reiterated that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum mst be submitted to a jury and proved beyond a reasonable doubt. Blakely, 524 U.S. at 301. This is what we stated in Woodruff, 296 F.3d at 1050. Moreover, the jury made specific findings that Bannister was guilty of each bank robbery and that he used a firearm during those robberies. Thus, these facts were proven to a jury beyond a reasonable doubt.

(Cr-DE#276).

Presentation of this claim in this §2255 proceeding in the

guise of an ineffective assistance of counsel claim adds nothing of substance which would justify a different result. The claim is procedurally barred. See United States v. Nyhuis, 211 F.3d 1340 (11th Cir. 2000)(Defendant was not entitled to collateral relief based on due process claim that was mere recharacterization of double jeopardy and immunity claim that was rejected on direct appeal), citing, United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981). A rejected claim does not merit rehearing on a different, but previously available legal theory. United States v. Nyhuis, 211 F.3d at 1343, citing, Cook v. Lockhart, 878 F.2d 220, 222 (8th Cir. 1989). Consequently, the movant is entitled to no relief on this claim. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. See Matire v. Wainwright, supra.

In **claim six**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that the movant is actually innocent of the charges, which convictions were based on false and unreliable testimony of government witnesses. (Cv-DE#1:6a).

First, the movant's protestations of innocence in this motion to vacate are without substantiation in the record. A habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). The movant must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11th Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8th Cir.2000); Lucidore v. New York State Div. of

Parole, 209 F.3d 107 (2nd Cir. 2000);citing Schlup v. Delo, 513
U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11th
Cir. 1998)(holding that appellant must establish that in light of
all the evidence, it is more likely than not that no reasonable
juror would have convicted him). To be credible, a claim of actual
innocence requires the petitioner to "support his allegations of
constitutional error with new reliable evidence--whether it be
exculpatory scientific evidence, trustworthy eyewitness accounts,
or critical physical evidence--that was not presented at trial."
Schlup v. Delo, 513 U.S. at 324. All things considered, the
evidence must undermine the Court's confidence in the outcome of
the trial. Id. at 316. No such showing has been made here. As such,
this claim is without merit.

   Moreover, the movant's claim is without factual or legal
support, especially in light of the fact that he failed to submit
the sworn affidavit from an unidentified witness which he claims
supports his argument that false and unreliable testimony which his
conviction was based on. As such, bare and conclusory allegations
of ineffective assistance of counsel which contradict the existing
record and are unsupported by affidavits or other indicia of
reliability, are insufficient to require a hearing or further
consideration.

   To the extent the movant argues the credibility of his co-
conspirators and whether there was sufficient evidence to find him
guilty as charged, this claim was raised on direct appeal and
appropriately addressed by the Eleventh Circuit's mandate. (See Cr-
DE#276). Under these circumstances, no deficient performance or
prejudice has been established pursuant to Strickland, supra, and
the movant is therefore entitled to no relief on the claims.
Likewise, appellate counsel was not ineffective for failing to

pursue this nonmeritorious claim on appeal. <u>See</u> <u>Matire v.</u> <u>Wainwright</u>, <u>supra</u>.

In **claim seven**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that the prosecution knowingly and intentionally presented false and unreliable testimony in order to convict the movant. (Cv-DE#1:6a).

Notwithstanding the movant's claims, he fails to provide any specific facts or law in support thereof. As such, his bare and conclusory allegations are without merit. There is nothing of record in this proceeding or in the underlying criminal case to support the movant's vague assertions. Under these circumstances, no deficient performance or prejudice has been established pursuant to <u>Strickland</u>, <u>supra</u>, and the movant is therefore entitled to no relief on the claims. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. See <u>Matire v. Wainwright</u>, <u>supra</u>.

Moreover, the movant fails to demonstrate what was the false and unreliable information and how the prosecutor knowingly and intentionally presented false testimony. Even if there was false testimony and unreliable testimony presented or if the prosecutor did in fact knowingly and intentionally present false testimony and counsel objected, the movant fails to demonstrate that not only would the court sustain the objections, but that as a result of sustaining the objections, his case would have resulted in a not guilty verdict.

In **claim eight**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that the indictment's failure to provide him with notice of co-conspirators

for conspiracy charges involving the robberies resulted in a violation of his due process right to notice and his right against double jeopardy. (Cv-DE#1:6a). Specifically, the movant argues since Counts One, Three, Five and Seven of the Fifth Superseding Indictment failed to name a co-conspirator, he was deprived of his due process rights.

Notwithstanding, even if counsel argued that the indictment failed to provide him with notice of a co-conspirator for conspiracy charges involving the robberies, no showing has been made that it would have been successful.

In order to prove conspiracy, the government must prove that an agreement existed between two or more persons to commit a crime and that the defendants knowingly and voluntarily joined or participated in the illegal venture. United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983). Moreover, it is unnecessary for an indictment to provide the names of co-conspirators. United States v. Gospidon, 224 Fed. Appx. 940 (11th Cir. 2007); see United States v. Arbane, 446 F.3d 1223, 1228 n.8 (11th Cir. 2006); United States v. Peagler, 847 F.2d 756(11th Cir.1988)(conspiracy may be proved by direct or circumstantial evidence, and may be inferred from conduct of participants). A "[p]erson can be convicted of conspiring with persons who are not identified by name in indictment so long as indictment asserts that such other persons exist and evidence supports such assertion, and this is no less true simply because coconspirators named as codefendants in indictment were not prosecuted for conspiracy." United States v. Goodwin, 492 F.2d 1141 (5th Cir. 1974); see also Rogers v. United States, 340 U.S. 367, 375. (1951).

The overt acts that follow each conspiracy charge in the

27

indictment, provides sufficient assertions that non only did co-conspirators exist, but that evidence also existed to support said assertions. Specifically, the indictment states:

<u>Overt Acts: Bank of America Robbery</u>

In furtherance of this conspiracy, on or about November 10, 2003, at least one of the coconspirators committed at least one of the following overt acts in the Southern District of Florida:

1. Some of the coconspirators drove in stolen cars to the vicinity of the Bank of America, 5337 North Military Trail, in West Palm Beach ,Florida.

2. Some of the coconspirators covered their faces and wore gloves.

3. Some of the coconspirators armed themselves with firearms.

4. Some of the coconspirators entered the Bank of America and disarmed the security guard.

5. Some of the coconspirators, using one or more firearms, demanded money from bank employees.

6. Some of the coconspirators stole the security guard's firearm and approximately $9,078 in United States currency, including a dye pack, from the Bank of America.

7. Some of the coconspirators fled the Bank of America in a stolen car.

<u>Overt Acts: First National Bank and Trust Company</u>

In furtherance of this conspiracy, on or about April 14, 2004, at least one of the coconspirators committed at least one of the following overt acts in the southern

District of Florida:

1. Some of the coconspirators drove in stolen cars to the vicinity of the First National Bank and Trust Company in Tequesta, Florida.

2. Some of the coconspirators covered their faces and wore gloves.

3. Some of the coconspirators armed themselves with one or more firearms.

4. Some of the coconspirators entered the First National Bank and Trust Company.

5. Some of the coconspirators, using one or more firearms, demanded money from First National Bank and Trust Company employees.

6. Some of the coconspirators stole approximately $94,100 in United States currency from the First National Bank and Trust Company.

7. Some of the coconspirators fled the First National Bank and Trust Company in a stolen car.


Overt Acts: SunTrust Bank Robbery

In furtherance of this conspiracy, on or about April 14, 2004, at least one of the coconspirators committed at least one of the following overt acts in the Southern District of Florida:

1. Juan Bannister, John Wilkerson, a/k/a 'J.J.,' Rashard Reddick, a/k/a 'Pit Bull,' and Michael Lewis, a/k/a 'M.G.,' drove in stolen cars to the vicinity of the SunTrust Bank, in Port St. Lucie, Florida.

2. Juan Bannister waited nearby in a stolen vehicle while John Wilkerson, a/k/a 'J.J.,' Rashard Reddick, a/k/a 'Pit

Bull,' and Michael Lewis, a/k/a 'M.G.,' covered their faces, put on gloves, armed themselves with firearms, and, around 9:30 a.m., entered the SunTrust Bank.

3. Some of the coconspirators demanded money from SunTrust employees and stole approximately $60,318 in United States currency from the SunTrust Bank.

4. John Wilkerson, a/k/a 'J.J.,' Rashard Reddick, a/k/a 'Pit Bull,' and Michael Lewis, a/k/a 'M.G.,' fled the SunTrust Bank in a stolen vehicle.

5. John Wilkerson, a/k/a 'J.J.,' Rashard Reddick, a/k/a 'Pit Bull,' and Michael Lewis, a/k/a 'M.G.,' traveled a short distance, got into another stolen car, and were driven from the area by Juan Bannister.

(Cr-DE#115). Accordingly, the movant's argument that the indictment failed to provide him with notice of co-conspirators for conspiracy charges resulted in a violation of his due process right is without merit.

Moreover, to the extent the movant argues that the government's failure to identify the co-conspirators in the aforementioned counts of the indictment amounted to a violation of his "due process right to later plead double jeopardy," this claim is without merit as he failed to provide either any analysis, citations to the record or citations to any legal authority. As such, this claim is without merit.

Moreover, the Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. U.S. Const. amend. V.  Specifically, it "protects against a second prosecution for the same offense after acquittal;

30

it protects against a second prosecution for the same offense after conviction; and it provides against multiple punishments for the same offense." <u>Brown v. Ohio</u>, 432 U.S. 161 (1977); <u>United States v. Adams</u>, 1 F.3d 1566 (11th Cir. 1993); <u>United States v. Maza</u>, 983 F.2d 1004 (11th Cir. 1993)." Consequently, "an indictment serves dual purpose of apprising defendant of charges against him and of enabling him to plead double jeopardy bar if he is later charged with same offense." <u>United States v. American Waste Fibers Co.</u>, Inc., 809 F.2d 1044 (4th Cir. 1987). A review of the movant's Fifth Superseding Indictment reveals, that although not all the charges named the alleged co-conspirators, it was not so vague that it failed to apprise him of the conspiracy charges when the indictment tracked the statutory language and specified different overt acts allegedly done in furtherance of the conspiracies, together with dates and locations. <u>See id.</u> Under these circumstances, no deficient performance or prejudice has been established pursuant to <u>Strickland,</u> <u>supra</u>, and the movant is therefore entitled to no relief on the claim. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. <u>See</u> <u>Matire v. Wainwright</u>, <u>supra</u>.

In **claim nine**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object based on the multiplicity to the government's charging two separate conspiracies for the robberies. (Cv-DE#1:6b).

As is evident from the record, the movant was properly charged and found guilty of six separate conspiracies for three different robberies. Each conspiracy count was charged pursuant to a different federal statute; to wit: 18 U.S.C. §§2113(a) and (d) and 18 U.S.C. §1951(a), also respectively known as the FBRA and Hobbs

Act. Accordingly, in respects to the Bank of America robbery, the movant was charged with one count of conspiracy pursuant to the FBRA and another count of conspiracy, for the same robbery, pursuant to the Hobbs Act. (Cr-DE#115). The same charges were applied to the other two robberies, the First National Bank and Trust Company and the SunTrust Bank. (Id.).

Moreover, on appeal, the movant's counsel challenged the FBRA and Hobbs Act conspiracies charged for each of the three robberies as multiplicitous which was thereafter rejected by the Eleventh Circuit. (Cv-DE#11,Ex.D). Specifically, on appeal, counsel argued "Mr. Bannister's convictions for bank robbery and Hobbs Act violation for the same conduct violate the Double Jeopardy Clause of the Fifth Amendment." (Id.:31).

In denying the claim, the Eleventh Circuit held in part:

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be twice put in jeopardy of life or limb' for the same offense. U.S. Const. Amend. V, cl.2. A single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause, however. Albernaz v. United States, 450 U.S. 333, 344 n.3 (U.S. 1981); United States v. Hassoun, 476 F.3d 1181, 188-1189 (11th Cir. 2007). The key to determining whether there are in fact two distinct offenses is whether each statute 'requires proof of an additional fact which the other does not.' Blockburger v. United States, 284 U.S. 299, 304 (1932).

* * * * *

A side-by-side comparison of these two statutes [FBRA and the Hobbs Act] shows that they each required proof of at least one additional fact that would not be needed to sustain a conviction in the other. The Government can

charge someone with an offense under the §2113(a) of the FBRA if he uses force or intimidation to take property from a bank or if he enters a bank with the intent to commit a felony therein that will affect the bank and violate any U.S. statute, or to commit larceny therein. The Government can further charge someone with an offense under §2113(d) of the FBRA if he assaults someone with a dangerous weapon or puts their life in jeopardy with a dangerous weapon in the course of violating subsection '(a)' of the Act.

The statute does not require any sort of showing that the robbery or attempted robbery affected commerce - a key element of the Hobbs Act. Nor does it require a showing that a perpetrator used a firearm to assault someone during the commission of the offense - the key element of the firearm statute in 18 U.S.C. §924(c)(1)(A). Section 2113(d) of the FBRA speaks in broad terms of assault with a 'dangerous weapon.'

In order to prosecute someone under the Hobbs Act, however, the Government must show that the person committed or attempted to commit robbery, extortion, or an act of physical violence against another person or property and, in so doing, that he affected the flow of interstate commerce. Thus, the Hobbs Act requires proof of an element that is not required under the FBRA - an effect upon interstate commerce.

Thus, we find no error in the district court's decision to sentence the defendants for convictions under both the FBRA and the Hobbs Act . . . .

(Cv-DE#11,Ex.F:28-33).

Accordingly, in this case, the Eleventh Circuit already examined the elements of proof required to sustain a conviction under the FBRA and the Hobbs Act and concluded that because the two statutes required a different element of proof, it was proper for the Government to charge the movant with a conspiracy under each

33

statute per bank robbery.

Moreover, to the extent the movant is relitigating the merits of his federal conspiracy charges, he is precluded from doing so. An issue resolved against a movant on direct appeal cannot be relitigated in a §2255 motion. <u>United States v. Frady</u>, 456 U.S. 152, 166-168 (1982); <u>Dermota v. United States</u>, 895 F.2d 1324 (11th Cir. 1990), <u>cert. denied</u>, 498 U.S. 837 (1990); <u>United States v. Johnson</u>, 615 F.2d 1125, 1128 (5th Cir. 1980); <u>United States v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986).

Under these circumstances, no deficient performance or prejudice has been established pursuant to <u>Strickland</u>, <u>supra</u>, and the movant is therefore entitled to no relief on the claims. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. <u>See</u> <u>Matire v. Wainwright</u>, <u>supra</u>.

In **claim ten**, the movant asserts he was denied sufficient assistance of counsel at trial and on appeal. (Cv-DE#1:6b). Specifically, he argues that he has been "erroneously convicted and sentenced in the present case as a result of counsel's ineffective assistance during the trial and direct appeal stages of the case." (<u>Id.</u>). He further argues that "all of the issues presently being raised in the §2255 motion are being raised because of counsel's failure to preserve them in the district court and then raise them on direct appeal in the event of denial." (<u>Id.</u>)

It appears the movant is not so much raising a specific claim, but rather generally arguing that his conviction and sentence are

34

in error, thus he raised the issues presented in his motion to vacate. Accordingly, each of the movant's claim have been addressed in this report, and as such, they are all without merit.

In **claim eleven**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to the sentencing enhancements causing him to be sentenced "outside of his initial offense guideline level, initial offense guideline and maximum guideline sentence" imposed in violation of <u>Booker</u>. (Cv-DE#1:6b). This claim lacks specificity; the movant fails to argue how his sentence enhancements were inappropriate, how he suffered a Fifth Amendment violation as a result thereof, and an explanation of how a <u>Booker</u> error occurred.

To the extent the movant argues that his guideline range was miscalculated, this claim is without merit.

A review of the movant's PSI shows that despite the sentencing enhancements specific to all three robberies, the movant was classified as a career offender, as such, he had a base offense level of 34 and a criminal history category of VI. (PSI ¶¶39-70,91-93).

Pursuant to U.S.S.G. §4B1.1(a):

A defendant is considered a career offender because he was at least 18 years old at the time of the instant offense, the instant offense is a felony that is a crime of violence, and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

35

(PSI¶ 68).

At the time of his convictions of the underlying criminal case, the movant was at least 18 years old, his current offense was a crime of violence and he had the two qualifying felony convictions; to wit: possession of marijuana with intent to sell and resisting an officer with violence. (PSI¶68). The movant does not contend his prior convictions.

Moreover, since the statutory maximum penalty for the instant offense was 25 years or more, the offense level was set at 34, with a criminal history category of VI (PSI¶¶68,93,116), thus making the guideline imprisonment range 262 to 327 months. (PSI¶116). Notwithstanding, because the movant had to receive a 684 month mandatory minimum sentence for his §924(c) counts, the guideline range became 946 to 1011 months. (Id.). He was thereafter sentenced to 984 months imprisonment. (Cr-DEs#222,224).

As is evident, the movant's criminal career enhancement was based on his prior convictions, which is permitted. According to Apprendi v. New Jersey, the Court specifically excluded sentencing enhancements, outside the statutory maximum, based on prior convictions, such as the enhancement for career offenders. Apprendi v. New Jersey, 530 U.S. 466 (2000). Accordingly, because the movant was properly classified as a career offender, counsel was not deficient, nor did the movant suffer any prejudice, due to counsel's failure to raise this claim at either trial or on direct appeal.

In **claim twelve**, the movant asserts he was denied effective assistance of counsel when his attorney failed to challenge the "admission of inaccurate and contaminated DNA evidence and graphs. (Cv-DE#1:6c).

Again, the movant fails to explain how the experts on DNA failed to comply to the correct process in establishing the DNA results, he fails to explain what the correct process is, he fails to demonstrate how the DNA was contaminated, he fails to explain how the DNA was inappropriately handled, and he fails to show any proof that the chart relevant to the DNA was altered. Moreover, he fails to explain how the DNA evidence was not accurate and he fails to state how an investigation to the DNA process should have been handled. Likewise, even if counsel would have made objections thereto, the movant fails to demonstrate that not only would the court sustain said objections, but that as a result of sustaining the objections, his case would have resulted in a not guilty verdict.

Moreover, he fails to provide any specific facts or law in support of this claim. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. See Matire v. Wainwright, supra.

Despite the movant's vague allegations, his claim is without merit as the DNA evidence was neither contaminated nor was the DNA chart inaccurate. Moreover, in response to defense counsel's request, the government filed detailed expert witness summaries,

37

which included Forensic Scientist Catherine Cothran's DNA testing procedures and opinions based on her DNA test results of the "touch" evidence submitted to her. (Cr-DEs#99,148,Ex.B&C).

Likewise, defense counsel's subpoenaed Examiner Cothran for an entire working file in the case. In a letter she sent to the government, dated October 5, 2004, she listed all of the items she provided defense counsel. (Cv-DE#11,Ex.A).

Additionally, defense counsel retained Dr. William M. Shields as a DNA expert at a cost of $2,000 and provided Examiner Cothran's DNA materials to his expert for review. (Cv-DE#11,Ex.T,U).

Moreover, the evidence adduced at trial reveals that after being questioned as to her educational background, experience, her job as a DNA analyst and training in serology and DNA analysis, Examiner Cothran was classified as an expert witness. (Cr-DE#200:156).

Examiner Cothran testified that the PBSO lab follows the protocols that meet the FBI National Standards and Guidelines. (Cr-DE#200:154-156). After providing in detail the steps she undertook to assure that the DNA process was as accurate as possible, including having a second analyst review her work at the laboratory, along with a third analyst reviewing her entire file, including the DNA report, it was clear, from her testimony, that no evidence of contamination existed.

In regards to the movant's argument that the DNA chart was altered, this claim is also without merit. Examiner Cothran

38

prepared a chart in order to assist the understanding of her DNA results, which included a summary thereof. (Cr-DE#200:169). At the time the government sought to move the chart, exhibit 80, into evidence, defense counsel objected. (Id.:170). Defense counsel argued that the colored chart the government sought to move into evidence was different from an earlier chart prepared by the expert. (Id.). In response, the government informed the court, during a pre-trial review, errors were found on the chart and thereafter corrected. (Id.). The court then questioned the government whether the color chart comports with the laboratory test results, which the government acknowledged. (Id.). When questioned by the court, defense counsel agreed that he previously received copies of the lab reports. (Id.:171). As such, defense counsel agreed that if the color chart comported with the lab reports, he would not have an objection. (Id.). At the court's request, the government asked a series of questions of Examiner Cothran who testified that the results listed on her chart comported with her DNA test results; therefore, the court admitted exhibit 80 in evidence. (Id.:172).

During cross-examination, defense counsel introduced the original DNA chart and asked Examiner Cothran why discrepancies existed that warranted correction. (Cr-DE#200:204-205). In response thereto, Examiner Cothran explained that it was merely a typographical error as a result of the "cut and paste" function, which was subsequently corrected, as evidenced in exhibit 80. (Cr-DE#200:207).

Accordingly, the movant fails to show that counsel was ineffective regarding any of the allegations he asserts regarding the DNA evidence.

39

In **claim thirteen**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to a biased juror. (Cv-DE#1:6c).

The movant failed to identify the biased juror or offered any factual support that the district court failed to properly question the juror and evaluate said juror's bias. Moreover, even had counsel objected thereto, the movant fails to demonstrate that not only would the court sustain said objection, but by not having said jury on the panel, his case would have resulted in a not guilty verdict. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims. Likewise, appellate counsel was not ineffective for failing to pursue this nonmeritorious claim on appeal. See Matire v. Wainwright, supra.

## Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 20th day of July, 2009.

UNITED STATES MAGISTRATE JUDGE

40

```
cc:  Juan Bannister, Pro Se
     Reg. No. 72514-004
     USP - Coleman I
     Inmate Mail/Parcels

     P.O. Box 1033
     Coleman, FL 33521

     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132

     Janice Le Clainche, AUSA
     United States Attorney's Office
     500 South Australian Avenue
     Suite 400
     West Palm Beach, FL 33401
```