UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-81228-CIV-COHN/WHITE

JUAN BANNISTER,

        Movant,

v.

UNITED STATES OF AMERICA,

        Respondent.
_____/

## ORDER ADOPTING REPORT OF UNITED STATES MAGISTRATE JUDGE

**THIS CAUSE** is before the Court on the Report and Recommendation [DE 16] submitted by United States Magistrate Judge Patrick A. White regarding Juan Bannister's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [DE 1] ("Motion to Vacate"). Pursuant to 28 U.S.C. § 636(b)(1), the Court conducted a *de novo* review of the record, including the Motion to Vacate [DE 1], the United States's Answer to Bannister's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [DE 11], the Report and Recommendation [DE 16], Petitioner's Opposition to the Magistrate's Report and Recommendation and Request for Evidentiary Hearing for Correction of Constitutional Violations and Resolution of Matters in Dispute [DE 19] ("Objections"), Petitioner's Clarification of Issue Presented in His § 2255 Motion [DE 24] ("Clarification"), the Government's Response to Bannister's Objections to the Magistrate Judge's Report and Recommendations [DE 25] ("Response"), and the Declaration of Michael Lewis [DE 26-1], and the Court is otherwise advised in the premises.

## I. BACKGROUND

On December 16, 2004, Mr. Bannister, along with others, was indicted on a series of offenses in connection with the armed robberies of Bank of America, First National and SunTrust banks. Specifically, Mr. Bannister was charged with conspiracy to commit armed bank robbery under 18 U.S.C. § 371, the commission of bank robbery by force or violence under 18 U.S.C. § 2113(a) and (d), interference in interstate commerce through threat or violence under 18 U.S.C. § 1951(a), and brandishing a firearm during the commission of a bank robbery in violation of 18 U.S.C. § 924(c)(1)(A).

The Government proceeded to trial against Mr. Bannister and a co-defendant named Rashard Reddick. At calender call, on February 10, 2005, the Court addressed the issue of whether to sever the trials of Mr. Bannister and Mr. Reddick. Although the law favors joint trials of defendants who are indicted together, the severance issue arose because Mr. Reddick provided a post-Miranda statement which inculpated Mr. Bannister as the driver in the SunTrust bank robbery. The Court determined that a partial severance was in order under Bruton v. U.S., 391 U.S. 123 (1968), because Mr. Reddick's statement could not be redacted without causing prejudice to Mr. Bannister. The Court decided that rather than presiding over two three-week trials with the same evidence and witnesses, the Court would empanel two separate juries and proceed with a joint trial. Mr. Bannister filed an objection to the procedure, which the Court overruled. At trial, prior to hearing testimony regarding Mr. Reddick's post-Miranda statement, the Government rested its case against Mr. Bannister and the jury that was to decide Mr. Bannister's case was excused from the courtroom. In addition, the

Government provided separate summations to the juries so that no reference to Mr. Reddick's statement was made before the jury charged with deciding Mr. Bannister's case.

The trial commenced on February 14, 2005 and on March 7, 2005, both juries returned verdicts that found Mr. Bannister and Mr. Reddick guilty as charged on all counts. On May 27, 2005, the Court sentenced Mr. Bannister to a term of imprisonment of 984 months. This sentence included concurrent jail terms of 60, 296, and 240 months on the conspiracy, armed bank robbery, and obstruction of commerce violations, and consecutive jail terms of 84, 300, and 300 months for the corresponding firearm offenses. The prison term is followed by a five-year period of supervised release. The Court also ordered Mr. Bannister to pay restitution in the amount of $177,275.62 and a special assessment of $1,200.00.

On June 6, 2005, Mr. Bannister filed an appeal with the Eleventh Circuit Court. He argued that his convictions for armed bank robbery under the Federal Bank Robbery Act and interference in interstate commerce conviction under the Hobbs Act were multiplicitous. Mr. Bannister also argued that it was a violation of the Fifth Amendment prohibition against double jeopardy to impose multiple sentences for these convictions. In addition, Mr. Bannister (1) challenged the admission of certain testimony; (2) argued there was insufficient evidence to support the four counts against him related to the armed robbery of the First National Bank; (3) argued the Court erred in admitting evidence of uncharged criminal conduct, i.e., possession of a firearm; (4) claimed the Government "paid" for the testimony of his cooperating co-defendants because the Government promised those witnesses immunity, leniency or lower sentences; and (5)

3

challenged the Court's application of the federal sentencing guidelines. On May 29, 2007, the Eleventh Circuit issued an unpublished opinion affirming Mr. Bannister's conviction and sentence. See U.S. v. Reddick, 231 Fed. Appx. 903 (11th Cir. 2007).

Mr. Bannister petitioned for a writ of certiorari which was denied on October 1, 2007. Accordingly, Mr. Bannister had one year from that date to file a § 2255 motion. On September 5, 2008, Mr. Bannister filed a motion for extension of time because the prison where he was incarcerated experienced a "lock down." In granting the motion over the Government's objection, the Court stated that "although the Court agrees with the position taken by the Government in its response," a one-month extension would be granted "in an abundance of caution." Cr-DE 290 at 1.[1] Mr. Bannister's Motion to Vacate was signed on October 19, 2008 and docketed on October 23, 2008. There, Mr. Bannister raises the following claims:

1. The Movant was denied effective assistance of counsel when his attorney failed to object to the Court's lack of jurisdiction over the crimes charged in the indictment. DE 1:4.

2. The Movant was denied effective assistance of counsel when his attorney failed to argue that the prosecutor failed to obtain a transfer order or nonprosecution order from the State of Florida, thus violating his due process rights. DE 1:4.

3. The Movant was denied effective assistance of counsel when his attorney failed to move for a severance based on "prejudicial spillover" which violated his right to a fair trial. DE 1:4.

4. The Movant was denied effective assistance of counsel when his attorney failed to argue that the Court erroneously instructed the jury on co-conspirator liability pursuant to Pinkerton v. U.S., 328 U.S. 640 (1946). DE 1:5.

---

[1] This cite refers to Case No. 04-cr-80071-Cohn. All other citations to docket entries herein refer to Case No. 08-cv-81228-Cohn.

n/a
n/a

5. The Movant was denied effective assistance of counsel when his attorney failed to argue that the Court had no jurisdiction to impose two consecutive 25 year mandatory minimum sentences for his second and third convictions of a firearm offense, in violation of 18 U.S.C. §924(c)(1)(A). DE 1:6a.

6. The Movant was denied effective assistance of counsel when his attorney failed to argue that the Movant is actually innocent of the charges, which convictions were based on false and unreliable testimony of government witnesses. DE 1:6a.

7. The Movant was denied effective assistance of counsel when his attorney failed to argue that the prosecution knowingly and intentionally presented false and unreliable testimony to convict the Movant. DE 1:6a.

8. The Movant was denied effective assistance of counsel when his attorney failed to argue that the indictment's failure to provide him with notice of co-conspirators for conspiracy charges involving the robberies resulted in a violation of his due process right to notice and his right against double jeopardy. DE 1:6a.

9. The Movant was denied effective assistance of counsel when his attorney failed to object based on multiplicity to the Government's charging two separate conspiracies for the robberies. DE 1:6b.

10. The Movant was denied sufficient assistance of counsel at trial and on appeal. DE 1:6b.

11. The Movant was denied effective assistance of counsel when his attorney failed to object to the sentencing enhancements causing him to be sentenced "outside of his initial offense guideline level, initial offense guideline and maximum guideline sentence" imposed in violation of U.S. v. Booker, 543 U.S. 220 (2005). DE 1:6b.

12. The Movant was denied effective assistance of counsel when his attorney failed to challenge the "admission of inaccurate and contaminated DNA evidence and graphs. DE 1:6c.

13. The Movant was denied effective assistance of counsel when his attorney failed to object to a biased juror. DE 1:6c.

On July 21, 2009, after receiving the Government's Answer [DE 11] and a complete copy of the record in the underlying criminal case, see DE's 14 & 15, United

States Magistrate Judge Patrick White issued an exhaustive forty-page Report [DE 16] addressing all of the above claims. Judge White found that all thirteen claims lacked merit and recommended that Mr. Bannister's Motion to Vacate be denied.

On September 11, 2009, Mr. Bannister filed his Objections [DE 19] to the Report and Recommendation. For the most part, Mr. Bannister's Objections reargue the merits of the claims that were thoroughly addressed and ultimately rejected by Judge White. However, Mr. Bannister also attaches an unsworn letter from Michael Lewis, a Government witness that testified against Mr. Bannister at trial. See DE 19 at 29. The letter states that Mr. Lewis was involved in the April 14, 2004 robbery of the First National Bank and that "juan bannister wasn't involved in that robbery." Id. The letter goes on to state that the Government informed Mr. Lewis that it had incriminating evidence against him and that he would be "prosecuted to the full[est] extent (life imprisonment) for trying to protect juan bannister." Id. Also attached to the Objections is the Affidavit of Juan Bannister which states that he is "innocent and/or had no involvement in the robberies and firearm offenses charged in the indictment." Id. at 26. The Affidavit further states that Mr. Bannister "only recently obtained information from Michael Lewis that the government compelled him to testify untruthfully about my involvement in the robberies and firearm offenses of the present case." Id. The Affidavit also states that Mr. Bannister later received information that Mr. Lewis' probation officer and/or prosecutor threatened to violate Lewis' probation and impose sanctions on Lewis if he assisted Mr. Bannister. Id. In the Affidavit, Mr. Bannister

declares that he did not threaten or intimidate Mr. Lewis. Id.[2]

On October 13, 2009, the Government filed its Response to Bannister's Objections. Therein, the Government states the following:

> Upon being contacted by FBI Special Agent John MacVeigh, Michael Lewis has voluntarily provided a Declaration not only repudiating his unsworn letter to Bannister, and reaffirming that he provided truthful testimony while under oath at Bannister's 2005 trial, but also exposing Bannister's use of family members to attempt to obtain false and perjured evidence from Lewis in an attempt to have Bannister's conviction and sentence vacated.

DE 25 at 5.

The sworn Declaration of Michael Lewis states that he "wrote the letter to help Juan Bannister and avoid retaliation. I reaffirm what I said at trial." DE 26-1 ¶ 9. In the Declaration, Mr. Lewis also states that he "voluntarily cooperated with the government. Throughout my cooperation with the government, I was repeatedly told to tell the truth." Id. ¶ 10. Mr. Lewis also affirms that the "declaration is knowingly and voluntarily given. I have not been threatened or intimidated by the government in any way to make this declaration." Id. ¶ 11. Attached to the Declaration is an unsigned affidavit that was prepared for Mr. Lewis. Mr. Lewis declares that "I received an affidavit from Juan Bannister that had a signature line for me to sign. ... I never signed the affidavit because it was not true." Id. ¶ 6.

---

[2] Mr. Bannister also filed a Clarification of Issue Presented in His § 2255 Motion Relevant to His Claim of the Erroneous Admission of the Pinkerton Theory as an Element during Jury Instructions [DE 24]. There, Mr. Bannister argues that the Court's submission of "the Pinkerton theory as an element during the jury instructions . . . constituted a constructive amendment of the indictment." DE 24 at 2. Further, Mr. Bannister argues that because his "attorney was ineffective for failing to raise the issue during the trial and direct appeal . . . the issue is correctly and timely presented here." Id.

The Government also argues that Mr. Bannister's Motion to Vacate should be denied because (1) it is untimely; and (2) "there was a wealth of direct and circumstantial evidence produced by [the Government] and admitted in open court at Bannister's trial and there is no credible basis to believe that Bannister was the victim of a due process violation." DE 25 at 6.

## II. ANALYSIS

### 1. The Court Agrees with Judge White's Report that Mr. Bannister's Claims Lack Merit

As mentioned, Mr. Bannister's Objections consist primarily of rearguing the merits of his claims which were rejected by Judge White in his comprehensive Report [DE 16]. The Court agrees with Judge White's reasoning and therefore, apart from the issue regarding Mr. Lewis which is discussed below, the Court will respond briefly to the claims raised in Mr. Bannister's Objections.

All of the claims raised in Mr. Bannister's Objections are framed in the same context, i.e., that Mr. Bannister's counsel was ineffective for not raising these issues. In fact, a number of the issues were raised in Mr. Bannister's direct appeal and were rejected by the Eleventh Circuit. In any event, the common thread that runs throughout all claims in the Objections is that they lack merit and therefore Mr. Bannister's counsel could not have been ineffective for failing to raise these issues. See Strickland v. Washington, 466 U.S. 668, 695 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

The Objections argue that the Court lacked jurisdiction to hear the case against

Mr. Bannister and that the prosecutor "failed to obtain a transfer order or non-prosecution order from the state court." DE 19 at 5. Essentially, Mr. Bannister argues that this Court "preempt[ed] the state court's jurisdiction to prosecute him" and that by doing so, the Court interfered with "the state's police power." DE 19 at 4. These claims lack merit. Mr. Bannister was indicted on federal charges and the law is clear that "[w]hen a defendant violates both state and federal laws, either the state or the United States or both may prosecute him." See United States v. Nathan, 202 F.3d 230 (4th Cir. 2000), cert. denied, 120 S. Ct. 1994 (2000).

Next, Mr. Bannister argues that the Court's failure to sever his trial from the trial of Mr. Reddick resulted in a "prejudicial spillover." DE 19 at 7. "The general rule is that defendants charged with a common conspiracy should be tried together." U.S. v. Beale, 921 F.2d 1412, 1428 (11th Cir. 1991); accord U.S. v. Magdaniel-Mora, 746 F.2d 715, 718 (11th Cir. 1984) ("To repeat the familiar, persons indicted together ordinarily should be tried together."). The Court recognized an issue under Bruton and empaneled two juries and took the steps discussed above to ensure that Mr. Bannister was not prejudiced by Reddick's post-Miranda statement. Judge White explained that the Motion to Vacate "fails to provide any facts from either evidence or testimony proffered during trial that prejudiced him." DE 18 at 15. The Objections suffer from the same defect. Mr. Bannister's conclusory statements regarding "prejudicial spillover" are insufficient as a matter of law.

Mr. Bannister's Objections and Clarification take issue with the Court's instruction to the jury as to liability based on Pinkerton v. U.S., 328 U.S. 640 (1946). It is well-established that "a co-conspirator can be punished for a substantive offense

committed by one of his co-conspirators so long as the offense is reasonably foreseeable and is committed in furtherance of the conspiracy." U.S. v. Caporale, 806 F.2d 1487, 1508 (11th Cir. 1986). Mr. Bannister argues that the Court erred by instructing the jury that "the Pinkerton theory was a required element of the offenses." DE 19 at 9. In doing so, he argues that the Court "lessened the burden of proof." Id. at 10. Mr. Bannister's argument is incorrect. The first two elements of the Pinkerton instruction given by the Court required the Government to establish that the underlying offense was committed by a co-conspirator and that Mr. Bannister was a member of the conspiracy at the time of the commission of such offense. The Government then had to establish that the commission of the offense was a reasonablely foreseeable consequence of the conspiracy. This instruction was consistent with the law under Pinkerton.

Mr. Bannister attacks his sentence and argues that the Court "lacked jurisdiction to sentence" him to consecutive 25 year mandatory sentences for his two convictions under § 924(c)(1)(A). DE 19 at 12. According to Bannister, because "the prosecutor did not seek to have the Grand Jury indict the petitioner for the recidivist offense pursuant to § 924(c)(1)(C)(i), the district court lacked jurisdiction to sentence the petitioner to the twenty five (25) year recidivist offense." DE 19 at 13. This argument was rejected by the Eleventh Circuit on Mr. Bannister's direct appeal. "Bannister acknowledges that Eleventh Circuit precedent holds that an indictment need not charge that additional convictions under 18 U.S.C. § 924(c)(1)(C) were 'second or subsequent.'" Reddick, 231 Fed. Appx. at 926-27 (citing United States v. Woodruff, 296 F.3d 1041, 1050 (11th Cir. 2002)). To be clear, Mr. Bannister was charged in the

indictment with violations of § 924(c)(1)(A). In Woodruff, the Eleventh Circuit rejected a defendant's argument that a "district court erred by applying the 25 year statutory minimum under § 924(c)(1)(C)(i) because the indictment failed to allege that it was a second or subsequent conviction under § 924(c)." Woodruff, 296 F.3d at 1050. The Eleventh Circuit based its holding on the following reasoning:

> Here, as with § 924(c)(1)(A), every conviction under § 924(c)(1)(C) carries with it a statutory maximum sentence of life imprisonment. Accordingly, the imposition of an enhanced sentence pursuant to a particular subsection does not implicate Apprendi. Because Woodruff's case involves a sentencing factor, not an element of the offense, and because the maximum possible sentence he could receive under § 924(c) is life imprisonment, the district court did not err by enhancing his sentence pursuant to § 924(c)(1)(a)(iii).

Id. at 1050. Accordingly, Bannister's argument also must fail.

The next claims raised in the Objections are based on the letter written by Michael Lewis and Mr. Bannister's affidavit. Bannister argues that this evidence demonstrates that (1) he is actually innocent; and (2) the Government relied on false testimony to convict him. These arguments will be discussed in the following section.

Mr. Bannister also argues that the indictment's failure to include the name of his co-conspirators resulted in a violation of the Sixth Amendment. See DE 19 at 17. Mr. Bannister's arguments are again contrary to well-established law. "A person can be convicted of conspiring with persons who are not identified by name in an indictment so long as the indictment asserts that such other persons exist and the evidence supports such an assertion." U.S. v. Goodwin, 492 F.2d 1141, 1144 (5th Cir. 1974); accord U.S. v. Arbane, 446 F.3d 1223, 1228 n.8 (11th Cir. 2006). As discussed by Judge White, the indictment in this case met this standard. See DE 16 at 27-30.

The Objections state that the "prosecution has disquised [sic] multiplicity by charging him with numerous [ ] conspiracy offenses under different statutes." DE 19 at 18. This claim was dealt with at length by the Eleventh Circuit on Mr. Bannister's direct appeal. Reddick, 231 Fed. Appx. at 917-919. Suffice to say that there is nothing in the Objections that calls the Eleventh Circuit's rejection of this claim into question.

Mr. Bannister argues that his counsel was ineffective for failing to raise the claims contained in his Motion to Vacate. For the reasons discussed herein, these claims lack merit and therefore Bannister is unable to show any prejudice.

In claim eleven, Mr. Bannister argues that the Court erred in applying the career criminal enhancement in arriving at his sentence. This argument appears to be related to Mr. Bannister's argument that his indictment was required to provide notice of potential sentencing enhancements. As discussed above, this argument fails under Eleventh Circuit precedent. In addition, Judge White found that this "claim lacks specificity." DE 16 at 35. Nevertheless, Judge White proceeded to demonstrate why Mr. Bannister's sentence was lawful. The Objections do not undermine the reasoning contained in Judge White's Report.

The Objections repeat Bannister's argument that the Government's "DNA expert failed to comply to the correct process in establishing DNA results." DE 19 at 21. Mr. Bannister contends that his counsel was ineffective for failure to call "an independent DNA expert" to call the Government's evidence into question. Id. Judge White explains (1) the steps taken by the Government to establish the accuracy of its DNA evidence; (2) defense counsel's retainer of an independent expert to examine the evidence; and (3) defense counsel's efforts to impeach the reliability of the Government's DNA

12

evidence. See DE 16 at 37-39. Accordingly, Mr. Bannister is unable to demonstrate this his counsel was ineffective on this issue.

Finally, the Objections argue that the Court failed to properly question and evaluate an unnamed juror who was allegedly biased. Mr. Bannister fails not only to provide the name of this juror, but also any specific facts to support Bannister's claims that such juror could not be impartial.

### 2. Mr. Lewis' Letter Does Not Warrant a New Trial nor an Evidentiary Hearing

The unsworn letter written by Mr. Lewis is not credible and therefore it is insufficient to vacate Mr. Bannister's conviction or sentence. The foregoing conclusion is supported by the evidence before the Court and there is no need for an evidentiary hearing.

"Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction." Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984); accord United States v. Santiago, 837 F.2d 1545, 1550 (11th Cir. 1988) (noting that "recantations are viewed with extreme suspicion by the courts"). Moreover, the Eleventh Circuit has found that an unsworn letter is less reliable than testimony offered under oath or provided in an affidavit. Melson v. Allen, 548 F.3d 993, 1003 (11th Cir. 2008) (noting that statements not in the form of an affidavit are less reliable); Milton v. Secretary, Department of Corrections, 2009 WL 3150246, *3 (11th Cir. Oct. 1, 2009) (calling into question the reliability of a

hand-written letter which recanted prior testimony).  In general, a witness' recantation of trial testimony will justify a new trial only where the reviewing judge is satisfied that the recantation is true and that it will likely result a different verdict.  See Dobbert, at 1234 (citing Brown v. State, 381 So.2d 690, 692-693 (Fla. 1980)).

The Court is not satisfied that the recantation is true.  The Court's credibility determination is based on Mr. Lewis' sworn testimony and affidavit, both of which contradict the statements made in the letter.  In addition, the Court finds it probative that Mr. Lewis refused to sign the affidavit Mr. Bannister provided to him.

The Court also finds Mr. Bannister's Motion to Vacate must be denied because this newly discovered evidence "would probably not produce a different result at a new trial."  U.S. v. Calles, 271 Fed. Appx. 931, 943 (11th Cir. 2008).  In United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995), the Eleventh Circuit held that new testimony would probably not produce a new result where the Government was likely to impeach the new testimony with the witness' own inconsistent trial testimony.  Here, the case is even stronger because the Government could undermine the statements in the letter with not only trial testimony, but also with the Declaration of Michael Lewis [DE 26-1], which postdates the letter.  Further, the Government's Response points "a wealth of direct and circumstantial evidence" that linked Mr. Bannister to the crimes he was convicted of.  See DE 25 at 6-8.

### III.  CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Report of Magistrate Judge Patrick A. White [DE 16] is hereby

14

       **ADOPTED**.

2.    Mr. Bannister's Motion to Vacate [DE 1] is **DISMISSED with prejudice**.

3.    The Clerk of Court is hereby directed to **CLOSE** this case. All pending motions are **DENIED** as moot.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 30th day of October, 2009.

                                             JAMES I. COHN
                                             United States District Judge

Copies provided to:

Counsel of record via CM/ECF